# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **LYNN BESS, III** | * | **CIVIL ACTION NO.  12-2039** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **WARDEN, LOUISIANA STATE PENITENTIARY** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

*Pro Se* Petitioner Lynn Bess, III  filed a deficient petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on July 30, 2012 [doc. # 1], an amended petition on October 4, 2012 [doc. # 9], and a second amended petition on May 3, 2013 [doc. # 33].  Respondent responded to the petition on June 14, 2013.  [doc. # 35].  Petitioner, an inmate in the custody of Louisiana's Department of Public Safety and Corrections incarcerated at the Louisiana State Penitentiary, Angola, Louisiana, attacks his conviction and sentence for carjacking.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

### BACKGROUND

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal:

> The evidence at trial revealed that, on December 15, 2007, Defendant forced his way into a truck that was stopped at a stop sign, armed himself with a screwdriver that was on the dashboard of the truck and demanded the driver of the truck to drive.
>
> Leola Jessie Siebert ("Siebert") testified that, on December 15, 2007, she left her residence at 1402B Cole Avenue in Monroe, Louisiana, to assist the boyfriend of her

roommate, Robin. Robin advised Siebert that her boyfriend had been stopped by the police and needed someone to drive his vehicle away in order to prevent it from being towed. Since Robin had been drinking and could not drive, Siebert drove Robin's late model Ford pickup truck, with Ian Cooks and Lawrence Cooks accompanying her.

Siebert testified that she was not familiar with the area where the boyfriend was located and she got lost and missed her turn. While attempting to turn around to go in the correct direction, Siebert came to a stop sign at Owl Street and South College Street. There were two cars stopped in front of her at the stop sign.

Siebert testified that, while at this stop sign, Defendant, whom she had never seen before, approached the passenger side of the truck, jerked open the door and jumped into the truck, sitting on the lap of Lawrence Cooks. Once in the truck, he grabbed a screwdriver off the dash, pointed it at Siebert's neck and told her to "drive bitch." She testified that Defendant's actions "scared the hell out of her," she felt intimated by him and feared for her life. Siebert drove the truck as Defendant demanded because of her fear and intimidation. She further testified that she did not feel like she was in control of the vehicle. Siebert stated that she drove the vehicle until Defendant screamed for her to stop. Apparently, several police cars came into view near Powell Street and the American Legion Hall and Defendant demanded that Siebert stop the truck. Once the vehicle was stopped, Defendant dropped the screwdriver, jumped out of the truck and fled.

After absorbing the shock of what happened, Siebert drove around the American Legion Hall and made contact with Officer Richard Cole of the Monroe Police Department.  Siebert advised him of the incident and provided a description of the suspect. Officer Cole contacted other officers on his radio and began searching for the suspect.  Siebert testified that Officer Cole returned approximately five to ten minutes later with the suspect for her to identify. She stated she was able to positively identify the suspect as the person who forcibly entered her truck. In open court, she identified the suspect from that night as Defendant.

Officer Cole testified that, on December 15, 2007, he was working with the Monroe Police Department assisting another officer with a traffic stop between Owl Street and Renwick Street near the rear of the American Legion Hall. At this location, Officer Cole made contact with Siebert, who advised him that, a couple of blocks away, she was stopped at a stop sign when a black male jumped into the truck, grabbed a screwdriver off the dash and demanded that she drive. When this person saw the police unit, he yelled for Siebert to stop and he jumped out of the vehicle. Officer Cole testified that Siebert appeared to be in fear, scared and shocked at what had just happened. He testified that, after Siebert had given him an in-depth description of the suspect, he contacted other officers and began searching the area.

2

After a brief search of the surrounding area, Officer Cole testified that he located the suspect, handcuffed him and brought him back to Siebert to see if she could identify him. Officer Cole stated that Siebert and the other passengers immediately identified the suspect as the individual who had jumped into the vehicle. At that point, Officer Cole placed the suspect under arrest. Officer Cole identified the suspect for the jury as Defendant. He testified that Defendant's only statement was that Siebert and the other passengers had offered him a ride.

State's Exhibit 1, a screwdriver, was introduced into evidence. Officer Cole testified that he did not actually recover the screwdriver, but it was  handed to him from inside the truck. Officer Cole identified State's Exhibit 1 as the screwdriver he was given that night. On cross-examination, Officer Cole stated that no fingerprints were taken from the screwdriver because there was not a request for fingerprints.

The State called Ian Cooks, one of the passengers in the truck, as a witness. He identified Defendant as the individual who forced his way into the truck, armed himself with a screwdriver and demanded that Siebert  drive. Ian testified that he was sitting in the middle next to Siebert, who was driving the truck, and his brother Lawrence Cooks was sitting on the passenger side. He also stated that no one knew Defendant, nor did anyone invite him into the truck. Further, on cross-examination, Ian testified that Defendant lunged at Siebert with the screwdriver and told her to drive.

Lawrence Cooks was also called as a witness by the State. He stated that, on December 15, 2007, he was with his brother and Siebert, and they were going to pick up his cousin's car. When they approached the intersection at Owl and South College, they were third in line at a stop sign. While at the stop sign, a man walked over to his side of the truck and jumped in on top of him. Lawrence testified that no one invited the man into the truck. He further testified that, once inside the truck, the man was rambling, grabbed the screwdriver off the dashboard and pointed it toward Siebert and told her to drive. He stated that, when the  man jumped into the vehicle, he felt nervous, and his brother and Siebert appeared to be scared.

Mr. Cooks testified that he identified the person who jumped into the truck that night; however,  he was not able to "really say" if the person he identified that night was in the courtroom, as it had been a long time since the incident.

The only witness to testify on behalf of Defendant was Bernice Wells Coleman, Defendant's second cousin. She testified that Defendant stopped by her house on the evening of December 15, 2007, after 5:00 p.m., and that he stayed for a short time. On cross-examination, however, Ms. Coleman testified that she could not "remember exactly what date in time." Ms. Coleman did not provide any additional testimony.

3

*State v. Bess*, 47 So. 3d 524, 526-28 (La.App. 2 Cir. 2010).

On July 14, 2009, a jury found Petitioner guilty as charged of carjacking.  (R. 522).
Petitioner was subsequently adjudicated a Fourth Felony Habitual Offender and was sentenced to
life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
(R. 554).  Petitioner appealed to the Second Circuit Court of Appeal on February 17, 2010,
raising two assignments of error: (1) insufficient evidence; and, (2) a *Batson* violation.  (R. 574).
On appeal, the state appellate court affirmed the trial court's decision, finding that there was
clearly sufficient evidence to support a conviction of carjacking, and the trial judge
"conscientiously and thoroughly evaluated each of the State's reasons for its peremptory
challenges."  (R. 662-78); *see also Bess*, 47 So. 3d at 532.  On August 23, 2010, Petitioner
sought writs to the Louisiana Supreme Court, and his application was denied on February 25,
2011.  *State v. Bess*, 58 So. 3d 456 (La. 2011)

On February 24, 2012, Petitioner filed an application for Post Conviction Relief ("PCR")
raising four claims: (1) Petitioner's right to confront witnesses and his right to due process were
violated when the court relied upon the report of the sanity commission to determine Petitioner's
capacity to stand trial; (2) the trial court failed to arraign Petitioner on the habitual offender bill;
(3) the trial court erred in accepting a computer printout into evidence to establish habitual
offender status, and appellate counsel was ineffective for failing to argue this issue on appeal;
and, (4) ineffective assistance of counsel.  (R. 693, 703, 704, 707).  On March 7, 2012, the court
denied Petitioner's PCR application.  (R. 732).  Petitioner's application for writs was denied by
the Second Circuit on June 14, 2012.  (R. 769).  His writ application to the Louisiana Supreme
Court was denied on October 26, 2012.  (R. 814).

On July 30, 2012, Petitioner filed a hand written pleading to this Court, "requesting that a

stay or a hold be put on these claims."  [doc. # 1].  Thereafter, on October 4, 2012, Petitioner

filed an amended petition asserting the two claims originally raised on direct appeal; i.e.,

insufficient evidence and a *Batson* violation.  [doc. # 9-1, P. 5].  Then, on May 3, 2013,

Petitioner filed a second amended petition raising the four claims originally brought in his PCR

application: (1) violation of his confrontation clause rights during the competency hearing; (2)

failure of the trial court to arraign Petitioner on the multiple offender bill of information; (3) error

by the trial court in "permitting the computer printout from Cajun II to be introduced into

evidence[;]" and, (4) ineffective assistance of counsel.  [doc. # 33, P. 3].

  The matter is now before the undersigned.

## LAW AND ANALYSIS

## I. Standard of Review – 28 U.S.C. § 2254

  The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254,

governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims.

After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is

limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, —— U.S. ——, 131 S.

Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

  A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

5

state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting

*Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as

opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-

court decision." *Dowthitt*, 230 F.3d at 740.  Under the "unreasonable application" clause, a

federal *habeas* court may grant the writ only if the state court "identifies the correct governing

legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle

to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal

courts presume such determinations to be correct; however, the petitioner can rebut this

presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

## II.    Petitioner's Claims

### 1.    Claim One: Sufficiency of the Evidence

In claim one, Petitioner argues that the State's evidence failed to prove that he was guilty

of carjacking because the State did not show there was a "taking."  [doc. # 9-1, P. 11].  He argues

that the State's evidence only "show[ed] that petitioner jumped into the truck, grabbed the

screwdriver, and told the driver to drive[, and] . . . [h]e never tried to make her or any of the

passengers get out of the truck." *Id.*

When a *habeas* petitioner asserts that the evidence presented to the court was insufficient

to support his conviction, the limited question before a federal *habeas* court is whether the state

appellate court's decision to reject that claim was an objectively unreasonable application of the

clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v.*

*Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002).  A conviction is based on sufficient evidence if,

"after viewing the evidence in the light most favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The Louisiana appellate court properly invoked and applied the *Jackson* standard.  *See Bess*, 47 So. 3d at 528.  The court referenced the definitions relevant to the crime of carjacking under Louisiana law.  *See id*.  Specifically, La. R.S. 14:64.2 defines carjacking  as an "intentional taking of a motor vehicle . . . belonging to another person, in the presence of that person, or in the possession of a passenger, or any other person in lawful possession of the motor vehicle, by the use of force or intimidation." *Id.* (citing La. R.S. 14:62.2).  Because the Louisiana courts have not defined "taking" in the commission of a carjacking, the appellate court looked to the definition of "taking" in the context of theft.  Specifically, the court found that "a 'taking' includes an intent to usurp or negate the owner's dominion." *Bess*, 47 So. 3d 524 at 529 (citing *State v. Victor*, 368 So. 2d 711 (La. 1979)).

Ultimately, the Louisiana appeals court, applying the *Jackson* standard, found that "the evidence provided to the jury demonstrated that there was an intentional taking of the truck by Defendant through the use of force and intimidation in the presence of . . . [the victim], and, therefore, was clearly sufficient to support a conviction of carjacking.  *Id*.  According to the appellate court, the victim testified that while stopped at a stop sign, "Defendant jerked the door open, jumped in, grabbed a screwdriver off the dash, pointed it at Siebert and told her to 'drive

bitch.'" *Id.* Based on the above, the undersigned finds that the state court's findings were entirely reasonable; *a fortiori*, the state court's application of *Jackson* was not objectively unreasonable; therefore, Petitioner's claims for relief based on insufficiency of the evidence should be **DENIED.**

  2. Claim Two: *Batson* violation

  Petitioner next argues that the trial court improperly denied his *Batson* challenge to the state's use of peremptory strikes.  [doc. # 9-1, P. 13].  Relying on *Batson v. Kentucky*, 476 U.S. 79 (1986), Petitioner, an African-American, contends that "the record in the instant case shows that the State systematically eliminated several African-American potential jurors." *Id.*

  *Batson* requires defendants to demonstrate that the State used peremptory challenges in violation of the Equal Protection Clause.  *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986).  Since *Batson* is clearly established Supreme Court precedent, under 28 U.S.C. § 2254(d)(2), Petitioner must demonstrate that the trial court's decision in not finding a *Batson* violation was either contrary to or involved an unreasonable application of *Batson*.

  In *Batson*, the Court created a three-step analysis for trial courts to evaluate a defendant's claim of a racially discriminatory peremptory challenge.  *Id.* at 96-98.  First, "a defendant must make a *prima facie* showing that the prosecutor exercised his peremptory challenges on the basis of race." *Id.* at 96.  Second, "[o]nce the defendant makes a *prima facie* showing, the burden shifts to the State to come forward with a [race] neutral explanation" for the use of the peremptory challenge.  *Id.* at 97.  Third, and finally, the "trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98.

  In order to establish a *prima facie* case under *Batson*, a defendant: (1) must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove members of that group from the venire; (2) is entitled to rely on the fact

that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate; and (3) must show that the facts and circumstances of the state's use of peremptory challenges raise an inference that the prosecutor exercised peremptory challenges on the basis of race.  *Price v. Cain*, 560 F.3d 284, 286-87 (5th Cir. 2009).

The *prima facie* showing required by *Batson* "is not so onerous that a defendant would have to persuade the judge – on the basis of all the facts, some of which are impossible for the defendant to know with certainty – that the challenge was more likely than not the product of purposeful discrimination."  *Johnson v. California*, 545 U.S. 162, 170 (2005).  Indeed, a defendant satisfies *Batson's* first step by merely "producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred."  *Id.*

In order to demonstrate that the "facts and circumstances" of the state's use of peremptory challenges would permit the trial judge to draw an inference of racial discrimination, the defendant must "come forward with facts, not just numbers alone." *United States v. Branch*, 989 F.2d 752, 755 (5th Cir. 1993) (citing *United States v. Moore*, 895 F.2d 484, 485 (8th Cir. 1990)).  Moreover, "neither the total exclusion of a cognizable group from the jury nor the mere presence of one or two perhaps token members of the group on the jury is dispositive of whether the prima facie requirement is satisfied."  *Smith v. Cain*, No. 08-698, 2009 U.S. Dist. LEXIS 71152, at *34 (M.D. La. June 19, 2009) (Riedlinger, J.)  "Factors that give rise to an inference of discrimination include, among others, a pattern of strikes against jurors of a certain race and the prosecutor's statements and questions during voir dire."  *Brown v. Kinney*, 237 F.3d 556, 561 (5th Cir. 2001).

Petitioner's attorneys, Kenneth Trahan and James E. Lewis, established a *prima facie* case under *Batson* by pointing out that a total of five out of six peremptory challenges were used on black jurors.  (R. 401).  The trial court agreed, finding that "the defense has made a . . . prima facie showing of discrimination," and looked to the State "to put . . . any race neutral reasons . . .

for exercising these challenges on the record." (R. 402).  Accordingly, the State went through the *Batson* analysis for each of the five peremptory challenges and provided race neutral reasons for executing the challenges.[1]  *See* (R. 402-19).

The third and final step of *Batson* requires a court to determine the "decisive question" of "whether a proffered race-neutral explanation should be believed" or whether it is pretext for discrimination.  *Id.* at 572.  In assessing this question, the court engages in a "comparative analysis" of the reasons the state proffered for exercising peremptory challenges against black jurors with the state's treatment of white jurors, even if petitioner does not provide the court with a comparative analysis of his own.  *Reed v. Quarterman*, 555 F.3d 364, 373 (5th Cir. 2009).  Under this analysis, "if the State asserts that it struck a black juror with a particular characteristic,

---

[1] Specifically, the state offered the following compelling race neutral reasons for the peremptory challenges as to each of the five jurors:

1.  Juror Eddie Clark:  He would not be able to give a hundred percent of his attention to the testimony because he would be preoccupied with his private law practice and his other obligations.  (R. 402).

2.  Juror Sandra Carroll:  She could not give her full attention to the trial due to the fact that her sister was gravely ill.  (R. 404).

3.  Juror Isiah Cooper:  He recently served on a criminal jury and voted in the minority.  The state pointed out that they struck a white juror for the same reason.  (R. 406).

4.  Juror Arthur Thomas:  He stated that he would want Defendant to testify.  Additionally, the state argued that Mr. Thomas would not make a good juror because he is not assertive enough to hold an opinion during deliberations.  (R. 415).

5.  Juror Brittany Lenard:  The state argued that she would not be able to apply the law as given because she would hold the State to a higher standard – i.e., proof beyond all doubt. (R. 419)

and it also accepted nonblack jurors with that same characteristic, that is evidence that the asserted justification was a pretext for discrimination." *Id.* at 375.  Ultimately, in this case, the trial court was satisfied with the State's proffered race neutral reasons and denied the *Batson* challenge as to each juror, in turn.

On direct appeal, the Second Circuit Court of Appeal held that the "trial judge conscientiously and thoroughly evaluated each of the State's reasons for its peremptory challenges." *Bess*, 47 So. 3d at 532.  Moreover, the court found that "[f]or each of its peremptory challenges, the State did not refer to race of the jurors as a basis for the challenge.  The State provided to the judge sufficient race neutral reasons for challenging each of the jurors based on either the prospective jurors' statements made during voir dire, or during re-questioning by the judge, and their demeanor." *Id.*  Accordingly, the appellate court dismissed the claim as without merit.

Under the third prong of *Batson*, the finding of an absence of discriminatory intent is based upon whether the trial court found the race-neutral explanation offered by the state credible.  Here, the trial court was in the best position to gauge the prosecutor's intentions for challenging the five jurors, and moreover, it was in a unique position to observe firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript.  There is nothing in the record to show that the trial court unreasonably applied *Batson* in making its determination that the state's race-neutral explanations for challenging the five jurors were credible.  Therefore, the undersigned cannot find that the state courts' decisions were an unreasonable application of *Batson*, and thus his claim on this basis should be **DENIED**.

3.      Claim Three: Confrontation Clause

11

Petitioner next argues that "he was denied a right to a fair sanity hearing when both of the psychiatri[sts] who examined him, never showed up at the Contradictory hearing to testify as to his sanity."  [doc. # 33, P. 7].  On June 24, 2008, Petitioner, through counsel, filed a motion to appoint a sanity commission, averring that he "is unable to understand the nature of the charges against him, nor can he assist in his defense."  (R. 59).  Both experts agreed that Petitioner was competent to stand trial and to assist his counsel.  (R. 11).  A contradictory hearing was held on October 20-21, 2008, and neither the state nor the defense subpoenaed members of the sanity commission, but instead stipulated to the experts' reports.  (R. 11-12).

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. Am. VI.  "The right to confrontation is a *trial right*, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination."  *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (emphasis in original); *Mancusi v. Stubbs*, 408 U.S. 204, 211 (1972) (citing *Barber v. Page*, 390 U.S. 719, 725-26 (1968)).  It is unclear to what extent the Sixth Amendment right to confront witnesses applies to pre-trial hearings like the one at issue here.  *See United States v. Hamilton*, 107 F.3d 499, 506 (7th Cir. 1997) (noting that cases addressing confrontation rights in pre-trial proceedings are "few and inconsistent," declining to decide whether the Sixth Amendment applies to a pretrial hearing on defendant's competency to stand trial, and instead finding that admitting telephonic testimony at hearing was harmless error); *United States v. Burke*, 425 F.3d 416, 426 (5th Cir. 2003) (declining to decide whether fact that video teleconferencing occurred at suppression hearing rather than during trial affected application of Confrontation Clause and finding that defendant's right to confront witnesses against him was not implicated because defendant was physically present with witnesses and only judge was remote).  In *Kentucky v.*

12

*Stincer*, 482 U.S. 730, 740 (1987), the Supreme Court held that the "exclusion of defendant from a hearing held to determine the competency of two child witnesses to testify does not violate defendant's rights under the Confrontation Clause of the Sixth Amendment or the Due Process Clause of the Fourteenth Amendment."

On collateral review, the state court found that "[b]ecause the law specifically allows for the introduction of competency reports compiled by members of a court-appointed sanity commission as an exception to the hearsay rule, and since Bess' right to confront witnesses against him was not violated, this claim has no merit."  (R. 728).

Here, assuming that the Confrontation Clause applies to this pre-trial competency hearing, Petitioner was afforded an opportunity to confront the experts and to cross-examine them at the October 20-21, 2008, contradictory hearing, but failed to subpoena the experts, and instead stipulated to their reports.  Accordingly, since Petitioner was given an opportunity to confront these witnesses but waived that right, his claim on this basis should be **DENIED**.

   4. <u>Claim Four: Multiple Offender Bill</u>

In Petitioner's fourth claim, he argues that "he was never arraigned on the Multiple Offender Bill of Information" in violation of La. R.S. 15:529.1(D)(1)(a).  [doc. # 33, P. 16].  Therefore, Petitioner argues, "it was [an] error for the trial court to proceed to a hearing on the Multiple Offender Bill of Information without first advising Mr. Bess of the specific allegations and his right to a formal hearing."  *Id.*  Petitioner also alleges that trial counsel was ineffective for failing to object to the waiver of arraignment.

The state court found that Petitioner's court appointed counsel "waived formal arraignment" on the Habitual Offender Bill of Information.  (R. 728).  Moreover, relying on *State v. Harris*, 20 So.2d 1121 (La. App. 2 Cir. 2009), the court found that because Petitioner waived arraignment, his claim has no merit.  *Id.*

To warrant federal *habeas corpus* relief, an error must result in a violation of Petitioner's right to due process under federal law.  The federal *habeas* court's role is limited to determining whether an alleged trial error is so extreme that it denied petitioner a fair trial. *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986); *see also Mattheson v. King*, 751 F.2d 1432, 1445 (5th Cir.1985).  As stated above, Petitioner waived his right to be arraigned on the Habitual Offender Bill of Information, and therefore, by virtue of his own waiver, he could not have been denied any constitutional right.  Furthermore, Petitioner fails to cite any established federal constitutional right of which he was denied, and merely relies on state procedural law in support of his claim (i.e., La. R.S. 15:529.1(D)(1)(a)).  Regarding the ineffective assistance of counsel claim, Petitioner fails to allege or to provide any evidence to support a claim that if his counsel had not waived formal arraignment on his behalf, the outcome of his sentencing would have been different.  Accordingly, the instant claim is without merit and should be **DENIED**.

5.     Claim Five: Computer Printout Introduced into Evidence

Petitioner argues that the trial court erred when it allowed the state to introduce "a computer printout from the Cajun II database" to establish the predicate offense during his habitual offender hearing.  [doc. # 33, P. 18].  Specifically, Petitioner contends that the documents used to establish his predicate offenses were "hearsay and the witness (Mrs. Hammet) did not generate it; input into computer, or printout the material." *Id.*

The admissibility of evidence is governed by state law. *See Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.1991) (citing *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986)).  As the Supreme Court has repeatedly held, "federal *habeas corpus* relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").  Therefore, an alleged violation of state law,

14

in and of itself, does not merit federal *habeas corpus* relief.  As explained by the Fifth Circuit, federal courts "'do not sit as a 'super' state supreme court' in [a *habeas corpus*] proceeding to review errors under state law." *Dickerson*, 932 F.2d at 1145 (*quoting Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir.1970)); *accord Cronnon v. Alabama*, 587 F.2d 246, 250 (5th Cir.1979) (quoting *Martin*).  A federal court will only grant *habeas corpus* relief based on state court's erroneous evidentiary ruling if it results in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause.  *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (quoting *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir.1983)).  Therefore, "[t]he erroneous admission of prejudicial evidence will justify *habeas* relief only if the admission was a crucial, highly significant factor in the defendant's conviction."  *Id*.  Moreover, as the Supreme Court recently explained, "the potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair."  *Perry v. New Hampshire*, —— U.S. ——, ——, 132 S.Ct. 716, 728, 181 L.Ed.2d 694 (2012) (citing *Kansas v. Ventris*, 556 U.S. 586, 594 (2009); *Dowling v. United States*, 493 U.S. 342, 353 (1990)).

On collateral review, the state court found that the "'pen pack' admitted into evidence at the habitual offender hearing was properly certified by Ella Peterson, Custodian of Records of the Office of Probation and Parole.  Since this certification meets the requirements of R.S. 15:529.1(F) and C.E. Arts. 902(2)(b) and 904, this claim lacks merit."  (R. 730).

It is clear that the trial court was not in error by admitting the "pen pack" into evidence. However, even assuming, *arguendo*, that it was in error, Petitioner has failed to establish that this admission was so prejudicial and crucial in his conviction and sentencing as to render his habitual offender proceeding fundamentally unfair.  Therefore, Petitioner is unable to establish that the error was so prejudicial as to result in a denial of a constitutionally fair proceeding. Accordingly, Petitioner's claim on this basis should be **DENIED**.

15

Regarding Petitioner's claim of ineffective assistance of appellate counsel, for failing to raise this evidentiary issue on direct appeal, the undersigned finds that Petitioner properly brought this evidentiary claim first on PCR review and now on *habeas* review.  Both the state courts and this Court have addressed the merits of the evidentiary claim, and therefore, Petitioner is unable to argue that his appellate counsel's failure to bring this claim caused him actual prejudice on appeal.  Therefore, Petitioner's claim for relief on this grounds should also be **DENIED**.

      6.      <u>Claim Six: Ineffective Assistance of Counsel</u>

In Petitioner's final claim, he alleges ineffective assistance of counsel for failure to (1) investigate statements made by witnesses in this case and prepare a defense, (2) maintain Petitioner's plea of not guilty by reason of insanity, (3) object to the introduction of the "pen pack", and (4) review the record for "constitutional or potential errors." [doc. # 33, P.  22-34].

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thronton*, 646 F.3d 199 (5th Cir. 2011); *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a petitioner must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132

F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).  Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).  Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time.  *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

On collateral review, the state trial court denied Petitioner's claim, finding that (1) trial counsel would have been "improvident in pursuing . . . a[n] [insanity] defense," (2) there was very little evidence for trial counsel to review and "[t]his was a case based on eyewitness accounts," and (3) Petitioner failed to provide specifics as to what potential errors appellate counsel failed to find in the record.  (R. 730-731).

The undersigned cannot find that the state courts' determinations were an unreasonable

application of clearly established federal law.  First, claims of 'failure-to-investigate' are not favored in federal *habeas corpus* review because the presentation of testimonial evidence is a matter of trial strategy and because allegations  of the content of a prospective witness's testimony are largely speculative.  *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citing *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986)).  "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a *habeas* court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance."  *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).  Here, Petitioner fails to describe what evidence or potential witnesses trial counsel failed to discover, and therefore, the undersigned finds that his 'failure-to-investigate' claim is frivolous.

Second, as Respondent correctly points out and the record reveals, Petitioner never entered a plea of "not guilty by reason of insanity" during the course of his criminal proceedings. Specifically, on March 5, 2008, Petitioner was present in Courtoom #7 at 9:00am "represented by Hon. W. Lee Perkins on behalf of Hon. Kenneth Trahan," and Petitioner "waived formal arraignment and entered a *plea of not guilty*."  (R. 3) (emphasis added).   Thus, Petitioner's argument is unsupported by fact and completely without merit.

Third, as described *supra* in claim five, the trial court did not err by admitting the "pen packs" into evidence.  Therefore, trial counsel could not be ineffective for failing to raise a meritless objection.  Accordingly, Petitioner's ineffective assistance of trial counsel claim on this basis should be rejected as frivolous.

Fourth and finally, Petitioner appends an ineffective assistance of appellate counsel claim for "fail[ing] to protect the appeal rights of the Petitioner by failing to review the record for

Constitutional or even potential errors." [doc. # 33, P. 33].  A *habeas* petitioner has the burden of proving facts in support of his or her claim, and unsupported conclusory allegations do not warrant *habeas* relief.  *Uresti v. Lynaugh*, 821 F.2d 1099, 1103 (5th Cir. 1987); *Wilson v. Butler*, 813 F.2d 664, 671 (5th Cir. 1987); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980).  Petitioner raises this claim in conclusory fashion and has provided no factual support in the form of any specific instances in which appellate counsel failed to discover constitutional violations worthy of briefing on direct appeal; therefore, his claim is frivolous.

Petitioner failed to meet the *Strickland* standard in his application for PCR and the state court judge correctly dismissed his initial collateral attack for that reason.  Petitioner likewise fails to meet the standard in his federal *habeas* petition, and accordingly, his claim for relief on the basis of ineffective assistance of counsel should be **DENIED**.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Petitioner Lynn Bess, III [docs. # 1, 9, 33] be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th  day of August, 2013.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE